UNITED STATES DISTRICT COURT        <u>NOT FOR PUBLICATION</u>

EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

ROBIN PRUE and JOHN PRUE,               :

                                               :

                   Plaintiffs,          :        <u>MEMORANDUM & ORDER</u>

                                               :

              - against -            :        No. 11-CV-3304 (ERK) (LB)

                                               :

FIBER COMPOSITES, LLC n/k/a FIBERON, LLC,     :

                                               :

                Defendant.         :

-------------------------------------------------------------------X

KORMAN, J.:

      On May 5, 2011, Robin Prue and John Prue (collectively, the "plaintiffs") filed a summons, complaint, and jury trial demand against Fiber Composites, LLC n/k/a Fiberon, LLC ("Fiber Composites") in the Supreme Court of the State of New York, Richmond County. [Summons & Verif. Compl., attached as Ex. A to Pollack Affirm.] The summons and complaint were served upon Fiber Composites on June 14, 2011. [DE 1 at 1; Def.'s Mem. of Law 2-3.] No explanation is provided for this delay.

      In their complaint, the plaintiffs allege that Fiber Composites manufactured decking materials that were used to construct a deck at the plaintiffs' residence in Staten Island, New York. [Verif. Compl. ¶¶ 11-12.] According to the plaintiffs, these decking materials were known as "FIBERON 5/4x6x16 REDWOOD, 2x8x12 MCA EACH, 2x10x16 EACH, FIBERON 5/4X6X20 REDWOOD, GAL 10 STICK NAIL 2.5, 248 FIB REDWOOD." [Verif. Compl. ¶ 11.] The plaintiffs claim that Fiber Composites (1) inspected the subject decking materials while they were in its exclusive control, (2) was a sales representative and/or agent of the decking materials, (3) was the distributor of the decking materials, (4) sold the decking materials, (5) distributed the decking materials into the stream of commerce, (6) sold the decking materials into

the stream of commerce, (7) put the decking materials into the "chain of commerce," (8) was in the business of manufacturing and selling the decking materials, and (9) provides (and provided) services in New York to remedy the plaintiffs for the defective decking materials.  [Verif. Compl. ¶¶ 13-22.]

In support of their first cause of action, which is for negligence, the plaintiffs aver that Fiber Composites "negligently manufactured and designed" the subject decking materials and that, as a result, these materials were "defective and unfit for [their] intended ordinary use." [Verif. Compl. ¶¶ 23-24.]  The plaintiffs state that, on or around May 7, 2007, Fiber Composites, its agents, servants and/or employees "sold and/or distributed" the decking materials to the plaintiffs.  [Verif. Compl. ¶ 25.]  The plaintiffs also say that Fiber Composites was provided with notice that the decking materials were defective and nonconforming.  [Verif. Compl. ¶ 26.]  And on or around May 7, 2007, "and for a period of time prior thereto," the plaintiffs say, "the aforementioned deck comprised [of] the DECKING MATERIALS was in a defective and unsafe condition and not fit for the purpose intended."  [Verif. Compl. ¶ 27.]  As a result, the plaintiffs say that they have sustained "severe economic losses" and that these "economic injuries were due directly to the carelessness, recklessness and negligence of the defendant, its agents, servants and/or employees in the manufacture and distribution of defective DECKING MATERIALS." [Verif. Compl. ¶ 29.]

In support of their second cause of action—which Fiber Composites interpreted as being for negligent misrepresentation [Def.'s Mem. of Law 8-12] but which the plaintiffs say, in their opposition memorandum, is for misrepresentation, deceptive practices, and false advertising in violation of New York General Business Law §§ 349 and 350 [Pls.' Mem. of Law 9-10]—the plaintiffs assert that Fiber Composites "advertised the DECKING MATERIALS on its website to

market and sell for profit" and "misrepresented the quality and durability of the DECKING MATERIALS on its website." [Verif. Compl. ¶¶ 32-33.] The plaintiffs further contend that Fiber Composites "induced the plaintiffs to rely on its misrepresentation and false statements on its website as to the quality, character and durability of the DECKING MATERIALS" and "intentionally mislead [sic] the plaintiffs as to the quality, character and durability of the DECKING MATERIALS." [Verif. Compl. ¶¶ 35-36.] The plaintiffs claim that, as a result, they have sustained "severe economic losses" and that these "economic injures were due directly to the carelessness, recklessness and negligence of the defendant, its agents, servants and/or employees in causing . . . the plaintiffs to rely on misleading advertisement(s) of the aforementioned DECKING MATERIALS." [Verif. Compl. ¶¶ 37-38.] In terms of what law applies, the plaintiffs assert that Fiber Composites' "unlawful false advertisements" of the decking materials were subject to "the laws and rules of the 'New York General Business.'" [Verif. Compl. ¶ 34.]

In support of their third cause of action, for breach of express and implied warranties, the plaintiffs allege that Fiber Composites, its agents, servants, and/or employees, "in connection with the design, manufacture, assembly, sale, and distribution of the said DECKING MATERIALS herein expressly warranted and represented the same to be reasonably safe and fit for the use for which it was intended, of merchantable quality, and free from defects." [Verif. Compl. ¶ 41.] As to what law applies, the plaintiffs claim that "the purchase and sale of the aforementioned DECKING MATERIALS were subject to the laws and rules of the 'New York Uniform Commercial Code'" and that these decking materials were subject to the Magnuson-Moss Warranty Act. [Verif. Compl. ¶¶ 42-43.]

With respect to their breach of express warranty claim, the plaintiffs state that Fiber Composites expressed a "warranty of merchantability" for the decking materials "by making assertions of fact relating to the quality, character and durability of the goods" and "by making assertions of fact relating to the DECKING MATERIALS that was a basis of the bargain for plaintiff[s] entering into the transaction."  [Verif. Compl. ¶¶ 44-45.]  The plaintiffs go on to say that this express warranty of merchantability was "false and misleading," that Fiber Composites "described the DECKING MATERIALS in a false manner and in fact caused the plaintiffs' [sic] to be mislead [sic] with respect to the quality and character of the product," and that Fiber Composites breached this express warranty of merchantability.  [Verif. Compl. ¶¶ 46-48.]

With respect to their breach of implied warranty claim, the plaintiffs assert that Fiber Composites "implied a warranty as to the quality, character and durability of the aforesaid DECKING MATERIALS which failed to perform as warranted" and that Fiber Composites breached this implied warranty of merchantability.  [Verif. Compl. ¶¶ 49-52.]  As a result of Fiber Composites' alleged breach of these express and implied warranties, the plaintiffs claim that they "have and continue to be deprived of the use of their deck comprised of the defective DECKING MATERIALS."  [Verif. Compl. ¶ 53.]  Specifically, the plaintiffs contend that, "as a result of the breach of said warranties on the part of the defendant, its agent(s), servant(s) and/or employee(s), [they] have suffered severe economic damages, [have been] prevented from the use and enjoyment of their deck and/or outdoor living area(s), and are exposed to health hazards."  [Verif. Compl. ¶ 54.]  The plaintiffs claim damages in the amount of $500,000 for each of their three claims.  [Verif. Compl. ¶¶ 30, 39, 55.]

On July 11, 2011, Fiber Composites filed a notice of removal pursuant to 28 U.S.C. § 1446 based on diversity of citizenship.  [DE 1 at 1-2.]  On July 15, 2011, Fiber Composites

moved to dismiss with prejudice the plaintiffs' complaint, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted. [*See* DE 3; DE 4.]

## DISCUSSION

### I. Pleading Standard

Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will no do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557). Moreover, "[t]he *Twombly-Iqbal* standard . . . applies to cases that were originally filed in state court and later removed to federal court." *Ohuche v. Merck & Co.*, No. 11 Civ. 2385, 2011 U.S. Dist. LEXIS 73904, at *4 (S.D.N.Y. July 7, 2011) (citing *DiFolco v. MSNBC Cable, L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). In *Iqbal*, the Supreme Court advanced a two-pronged approach to considering a motion to dismiss. First, a court can "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. The Court explained that, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*; *see*

*also id.* at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").   Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 1950; *see also Goldstein v. Pataki*, 516 F.3d 50, 53 (2d Cir. 2008) (observing that, in deciding a motion to dismiss, the allegations in the plaintiff's complaint must be taken as true and all reasonable inferences must be drawn in the plaintiff's favor).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*   "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).   In sum, if the plaintiffs' complaint here fails to allege "enough facts to state a claim to relief that is plausible on its face," it must be dismissed.  *See Twombly*, 550 U.S. at 570.  And "the Court is limited to facts as stated in the complaint."  *Gelber v. Stryker Corp.*, 788 F. Supp. 2d 145, 153 (S.D.N.Y. 2011).

## II.  Negligence (First Cause of Action)

In their first cause of action, the plaintiffs contend that Fiber Composites was negligent in how it manufactured and designed the decking materials that were used in the construction of a deck at their residence.   The plaintiffs assert that the subject decking materials were "in a defective and unsafe condition and not fit for the purpose intended" [Verif. Compl. ¶ 27] and

that, as a result of Fiber Composites' negligence, they suffered "severe economic losses" and "economic injuries" [Verif. Compl. ¶¶ 28-29].

Fiber Composites correctly argues that the plaintiffs' negligence claim is barred by the economic loss doctrine. [Def.'s Mem. of Law 4-7.] Under the economic loss doctrine, "[t]ort recovery in strict products liability and negligence against a manufacturer should not be available to a down-stream purchaser where the claimed losses flow from damage to the property that is the subject of the contract." *Bocre Leasing Corp. v. Gen. Motors Corp.*, 84 N.Y.2d 685, 694 (1995); *see also 532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 750 N.E.2d 1097, 1101 n.1 (N.Y. 2001) (describing the "economic loss" rule like so: "an end-purchaser of a product is limited to contract remedies and may not seek damages in tort for economic loss against a manufacturer"). Put differently, "no tort recovery can be had against the manufacturer for contractually based economic loss, whether due to injury to the product itself or consequential losses flowing therefrom."[1] *Bocre*, 84 N.Y.2d at 693; *see also id.* (noting that property damage to the defective product itself is a classic form of "contractual-type economic damages"). "In contrast, however, tort recovery is allowed for personal injuries and damage to 'other property.'" *Shema Kolainu-Hear Our Voices v. Providersoft, LLC*, No. 09-CV-3140, 2010 WL 2075921, at *8 (E.D.N.Y. May 21, 2010).

"The rationale behind the economic loss doctrine is that economic losses resulting from a defective product are best treated under the law of contracts, not tort." *Id.* at *9; *see also Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 16 (2d Cir. 2000) ("[C]ourts have applied the economic loss rule to prevent the recovery of damages that are inappropriate because they actually lie in the nature of breach of contract as opposed to tort."). "This is because '[t]he

---

[1] The economic loss rule, however, is not limited to suits against manufacturers, but rather also applies to suits by purchasers of a defective product against sellers, installers, and servicers. *See Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc.*, 915 N.Y.S.2d 7, 17 (App. Div. 2010).

particular seller and purchaser are in the best position to allocate risk at the time of their sale and purchase, and this risk allocation is usually manifested in the selling price.'" *Shema*, 2010 WL 2075921, at *9 (alteration in original) (quoting *Bocre*, 84 N.Y.2d at 688).

Here, the plaintiffs allege that Fiber Composites negligently manufactured the subject decking materials and then sold and/or distributed these defective materials to the plaintiffs. In the portion of their complaint dedicated to their negligence cause of action, however, the plaintiffs only allege economic losses. [*See* Verif. Compl. ¶¶ 28-29.] Indeed, the only damages mentioned are "severe economic losses" and "economic injuries." [*Id.*] In this portion of their complaint, the plaintiffs allege no personal injury or damage to "other property," apart from the damage to the decking materials themselves.

In their opposition to Fiber Composites' motion to dismiss, however, the plaintiffs argue that the economic loss doctrine does not bar their negligence cause of action because, in their complaint, they *have* alleged personal injury—namely, their "expos[ure] to health hazards" and their being "prevented from the use and enjoyment of their deck and/or outdoor living area(s)."[2] [Pls.' Mem. of Law 7; Verif. Compl. ¶ 54.] Notably, these allegations about health hazards and loss of use and enjoyment do not appear in the section of the complaint addressing the plaintiffs' negligence cause of action. Rather, they appear in the section of the complaint addressing their breach of warranty cause of action. Specifically, the complaint says that "*as a result of the breach of said warranties . . .* , the plaintiffs have and continue to be deprived of the use of their deck comprised of the defective DECKING MATERIALS" and that "*as a result of the breach of*

---

[2] The plaintiffs embellish their factual allegations by, for the first time in their opposition memorandum, alleging that their exposure to health hazards was "due to the exposure of active growing mold." [Pls.' Mem. of Law 7.] Because, in deciding a motion to dismiss, I am limited to the facts as stated in the complaint, this detail about "active growing mold" will be disregarded. *See Gelber*, 788 F. Supp. 2d at 153; *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) ("[A] party is not entitled to amend its complaint through statements made in motion papers.").

*said warranties* . . . , the plaintiffs have suffered severe economic damages, prevented from the use and enjoyment of their deck and/or outdoor living area(s), and are exposed to health hazards." [Verif. Compl. ¶¶ 53, 54.] Taking the plaintiffs at their word, the only losses flowing from Fiber Composites' alleged negligence is the economic loss due to the damage to the decking materials themselves—which, presumably, is the cost of replacing these materials. According to the complaint, these alleged personal injuries—exposure to health hazards and loss of use and enjoyment of their property—flow, not from Fiber Composites' alleged negligence, but rather from its alleged breach of express and implied warranties.

Nevertheless, in light of the liberal construction pleadings must be given, I treat the plaintiffs' alleged exposure to health hazards and loss of use and enjoyment as damages resulting from Fiber Composites' alleged negligence. *See* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."); *Allah v. Kemp*, No. 9:08-CV-1008, 2010 WL 1036802, at *2 (N.D.N.Y. Feb. 25, 2010) ("[A]ll pleadings are to be construed liberally under Rule 8(e) . . . .").

The plaintiffs' alleged loss of use and enjoyment of their deck and outdoor property is not a claim for personal injury. Although the owner of damaged property may recover for loss of use of that property during a reasonable period of time until the property can be replaced, *see Allanson v. Cummings*, 439 N.Y.S.2d 545, 548 (App. Div. 1981), loss of use is not a form of personal injury, but is instead a type of property damage, *cf. Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp.*, 73 F.3d 1178, 1187 (2d Cir. 1995) ("'Personal injury' is typically defined to include bodily injury, sickness, or disease, while 'property damage' is defined to include physical injury to or destruction of tangible property, including the loss of use."); *Williams Ford, Inc. v. Hartford Courant Co.*, 657 A.2d 212, 224 (Conn. 1995) ("Reading [Connecticut General Statutes] § 52-572h(b) in light of its history, we conclude that the legislature intended the phrase

9

'damage to property' to encompass only its usual and traditional meaning in the law of negligence actions, namely, damage to or the loss of use of tangible property, as opposed to damages for personal injury.").

As for the plaintiffs' alleged "expos[ure] to health hazards," the complaint makes no mention of any personal injuries actually resulting from their exposure to these hazards. *Cf., e.g.*, *Haggray v. Malek*, 799 N.Y.S.2d 689, 690 (App. Div. 2005) (describing plaintiff's allegation that her infant daughter sustained lead paint poisoning as a result of exposure to lead paint). Neither physical nor mental injury is alleged, and mere exposure to unidentified health hazards, without more, does not constitute personal injury. *See* 16 N.Y. Prac., N.Y. Law of Torts § 21.14 (1997) ("A personal injury plaintiff is entitled to compensatory damages for past and future physical and mental pain and suffering, past and future medical expenses and past and future losses of earnings or diminution in earning capacity." (footnotes omitted)); 36 N.Y. Jur.2d Torts § 58 (2005) ("The plaintiff's recovery [in a personal injury action] may include compensation for his or her pain and suffering, both present and future, impairment of physical functions or other disability, loss of time and impairment of earning capacity; and expenses of necessary medical and hospital care and other necessary expenses." (footnotes omitted)); Black's Law Dictionary 857 (9th ed. 2009) (defining "personal injury" as "1. In a negligence action, any harm caused to a person, such as a broken bone, a cut, or a bruise; bodily injury. 2. Any invasion of a personal right, including mental suffering and false imprisonment").

I also decline the plaintiffs' invitation to conclude that, because of their alleged exposure to health hazards, "they have/may be personally injured as a result of Defendant's breach."[3] [Pls.' Mem. of Law 7.] This is a bare-bones legal conclusion, unsupported by factual allegations

---

[3] It seems that, by using the word "breach," the plaintiffs are referring to Fiber Composites' alleged breach of express and implied warranties. [*See* Def.'s Reply 5.]

and, therefore, not entitled to the assumption of truth.  The plaintiffs' complaint fails to allege any facts—let alone "enough facts"—to support their belated claim that they were personally injured by Fiber Composites' negligence.  Their reassurance that more details regarding their injuries will be revealed during the discovery phase is insufficient.  [*See* Pls.' Mem. of Law 7.] For these reasons, the plaintiffs' negligence cause of action is dismissed as barred by the economic loss doctrine.[4]

## III.   Misrepresentation, Deceptive Practices, and False Advertising (Second Cause of Action)

The plaintiffs allege that Fiber Composites advertised the subject decking materials on its website, "misrepresented the quality and durability" of the decking materials, "induced the plaintiffs to rely on its misrepresentation and false statements on its website as to the quality, character and durability" of the decking materials, and "intentionally mislead [sic] the plaintiffs as to the quality, character and durability" of the decking materials.  [Verif. Compl. ¶¶, 32-33, 35-36.]  The plaintiffs say that, as a result of this conduct, they sustained "severe economic losses" and that these "economic injuries were due directly to the carelessness, recklessness and negligence of [Fiber Composites], its agents, servants and/or employees in causing . . . the plaintiffs to rely on misleading advertisement(s)" of the decking materials.  [Verif. Compl. ¶¶ 37-38.]  The plaintiffs add that Fiber Composites' "unlawful false advertisements" of the decking materials are subject to New York's General Business Law.  [Verif. Compl. ¶ 34.]

In its motion to dismiss, Fiber Composites interprets the plaintiffs' second cause of action as one for negligent misrepresentation.  [Def.'s Mem. of Law 8-12.]  But in their opposition memorandum, the plaintiffs assert that this interpretation is incorrect and that their second cause

---

[4] Because the plaintiffs' negligence claim is barred by the economic loss doctrine, I need not address Fiber Composites' argument that this claim is also subject to dismissal on statute-of-limitations grounds.

of action is in fact one for "misrepresentation, deceit, and misleading/incorrect advertisements" in violation of New York General Business Law §§ 349, 350.  [Pls.' Mem. of Law 9-10.]  That these specific statutory sections were not identified in the complaint is not fatal.  *See Lam v. Mass Confusion Sportswear, Inc.*, No. 86 Civ. 2728, 1986 WL 10712, at \*7 (S.D.N.Y. Sept. 18, 1986) ("It is sufficient that the complaint sets forth the facts upon which the action is based; a legal theory is not required."); *cf. Alexander v. Unification Church of Am.*, 634 F.2d 673, 678 (2d Cir. 1980) ("It is not material, under the liberal rules of federal pleading, that Count One was mislabelled by appellants' counsel."), *abrogated on other grounds by Curiano v. Suozzi*, 469 N.E.2d 1324 (N.Y.1984).

New York General Business Law § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service."  N.Y. General Business Law § 349(a).  To bring a successful claim under Section 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."  *City of New York v. Smokes-Spirits.Com, Inc.*, 911 N.E.2d 834, 838 (N.Y. 2009).  A plaintiff need not, however, prove reliance.  *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000). With respect to the first element, the Court of Appeals has held that a plaintiff "must demonstrate that the acts or practices have a broader impact on consumers at large."  *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995).  In other words, "[p]rivate contract disputes, unique to the parties, . . . would not fall within the ambit of the statute."  *Id.* With respect to the second element, the Court of Appeals has clarified that it requires the plaintiff to show that the defendant committed a "materially misleading or deceptive act or practice."  *City of New York*, 911 N.E.2d at 839.  "Whether a representation or an omission, the

deceptive practice must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Stutman*, 95 N.Y.2d at 29 (quoting *Oswego*, 85 N.Y.2d at 26).  As for the third element, the Court of Appeals has emphasized that "a plaintiff must prove 'actual' injury to recover under the statute, though not necessarily pecuniary harm." *Id.*

New York General Business Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. General Business Law § 350.  To state a cause of action for false advertising under this section, a plaintiff must similarly allege that "the advertisement (1) had an impact on consumers at large, (2) was deceptive or misleading in a material way, and (3) resulted in injury." *DeAngelis v. Timberpeg E., Inc.*, 858 N.Y.S.2d 410, 414 (App. Div. 2008) (internal quotation marks omitted).  Unlike claims under Section 349, however, a plaintiff bringing a claim for false advertising under Section 350 must demonstrate reliance on the allegedly false advertising. *Morrissey v. Nextel Partners, Inc.*, 895 N.Y.S.2d 580, 588 (App. Div. 2010); *see also Leider v. Ralfe*, 387 F. Supp. 2d 283, 292 (S.D.N.Y. 2005).  "Typically, this means that the plaintiff must 'point to [a] specific advertisement or public pronouncement' upon which he or she relied." *Leider*, 387 F. Supp. 2d at 292 (alteration in original) (quoting *Small v. Lorillard Tobacco Co.*, 679 N.Y.S.2d 593, 600 (App. Div. 1998), *aff'd*, 94 N.Y.2d 43 (1999)).

Here, the plaintiffs have failed to show that Fiber Composites committed a "materially misleading or deceptive act or practice" for purposes of their deceptive practices claim, *City of New York*, 911 N.E.2d at 839, or that the advertisements on its website were "deceptive or misleading in a material way" for purposes of their false advertising claim, *DeAngelis*, 858 N.Y.S.2d at 414.  In their complaint, all that the plaintiffs allege is (1) that Fiber Composites' website featured advertisements for the subject decking materials, (2) that these website

advertisements misrepresented and constituted false statements regarding the decking materials'
"quality, character and durability," (3) that the plaintiffs were induced into relying on these
misrepresentations and false statements, (4) that the plaintiffs were misled as to these three
characteristics of the decking materials, and (5) that the plaintiffs sustained "severe economic
losses" as a result.  [Verif. Compl. ¶¶ 32-33, 35-38.]

The plaintiffs fail to allege, however, what exactly these misrepresentations and false
statements were, nor do they even hint at how they were materially misleading or deceptive.  The
plaintiffs do not, for example, say that the decking materials were advertised as being firm and
shiny, when in fact they turned out to be soft and of a matte finish.  Instead, the plaintiffs merely
claim that the website contained misrepresentations and false statements about the decking
materials' quality, character, and durability.  From these bald allegations, it is impossible to
evaluate whether these statements would be "likely to mislead a reasonable consumer acting
reasonably under the circumstances."  *Stutman*, 95 N.Y.2d at 29 (internal quotation marks
omitted).  And for purposes of their false advertising claim, the plaintiffs thus fail to point to a
"specific advertisement or public pronouncement" upon which they relied.  *Leider*, 387 F. Supp.
2d at 292 (internal quotation marks omitted).  The plaintiffs' second cause of action is, therefore,
dismissed for failing to state a claim upon which relief can be granted.

### IV.  Breach of Express and Implied Warranties (Third Cause of Action)

In their complaint, the plaintiffs allege that Fiber Composites made both express and
implied warranties of merchantability and then breached them.  In describing the alleged express
warranty, the plaintiffs state that, "in connection with the design, manufacture, assembly, sale,
and distribution" of the subject decking materials, Fiber Composites "expressly warranted and
represented the same to be reasonably safe and fit for the use for which it was intended, of

14

merchantable quality, and free from defects." [Verif. Compl. ¶ 41.] Fiber Composites allegedly "expressed a warranty of merchantability . . . by making assertions of fact relating to the quality, character and durability" of the decking materials, which were "a basis of the bargain for plaintiff[s] entering into the transaction," and this express warranty was "false and misleading." [Verif. Compl. ¶¶ 44-46.] The plaintiffs go on to say that Fiber Composites described the subject decking materials "in a false manner and in fact caused the plaintiffs[] to be mis[led] with respect to the quality and character of the product." [Verif. Compl. ¶ 47.] Finally, the plaintiffs allege that Fiber Composites breached this express warranty of merchantability. [Verif. Compl. ¶ 48.]

In describing the alleged implied warranty, the plaintiffs say that Fiber Composites "implied a warranty as to the quality, character and durability" of the subject decking materials, that these materials "failed to perform as warranted," and that Fiber Composites breached this implied warranty of merchantability. [Verif. Compl. ¶¶ 49-52.] As a result of the alleged breaches of these warranties, "the plaintiffs have and continue to be deprived of the use of their deck" (which is made from the subject decking materials), have sustained "severe economic damages," have been "prevented from the use and enjoyment of their deck and/or outdoor living area(s)," and "are exposed to health hazards." [Verif. Compl. ¶¶ 53-54.]

## A. Express Warranty

"To state a claim for breach of express warranty, the plaintiff must show that there was an 'affirmation of fact or promise by the seller, the natural tendency of which [was] to induce the buyer to purchase, and that the warranty was relied upon.'" *Gelber v. Stryker Corp.*, 788 F. Supp. 2d 145, 165 (S.D.N.Y. 2011) (alteration in original) (quoting *Schimmenti v. Ply Gem Indus., Inc.*, 549 N.Y.S.2d 152, 154 (App. Div. 1989)); *see also Brooklyn Law Sch. v. Raybon, Inc.*, 540 N.Y.S.2d 404, 408 (Sup. Ct. 1989) (holding that the plaintiff law school had

sufficiently stated a cause of action for breach of express warranty because the school had "sufficiently stated the terms of the warranties and the school's detrimental reliance on them"), *rev'd on other grounds*, 572 N.Y.S.2d 312 (App. Div. 1991). "New York courts recognize that privity of contract is not required to state a claim of breach of [express] warranties contained in public advertising or sales literature." *Util. Metal Research, Inc. v. Generach Power Sys., Inc.*, No. 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *14-15 (E.D.N.Y. Nov. 18, 2004) (dismissing the plaintiff's breach of express warranty claim because the amended complaint "failed to identify any express warranty provisions allegedly breached by defendants or allege reliance on public advertising or sales literature").

In *Gelber*, a husband and wife brought a breach of express warranty claim, among other things, against the manufacturers of an artificial hip prosthesis that the plaintiff wife had had surgically implanted. 788 F. Supp. 2d at 148-49, 165-66. The plaintiffs alleged that the defendants had represented that (1) "the [artificial hip prosthesis] was safe and effective for its intended purpose" and that (2) "the defendants complied with the manufacturing specifications set forth in the premarket approval application submitted to the FDA." *Id.* at 165. The district judge held, however, that the plaintiffs' claims with respect to these two statements failed to state a claim for relief and were, therefore, dismissed. *Id.* Specifically, the district judge said that the plaintiffs had "failed to adequately identify the actionable conduct on the part of the defendants" in that, for example, their complaint did not allege "where these alleged representations appeared or to whom they were made." *Id.*

Similarly, in *Turbo Enterprises, Inc. v. Structuretone (UK), Inc.*, No. 602080/07, 2008 N.Y. Misc. LEXIS 8724 (Sup. Ct. 2008), a subcontractor's claim against a manufacturer for breach of express warranty was dismissed "for failure to specify a particular warranty on which

16

it could or did rely." *Id.* at *5.  As the state court judge explained, "the Complaint merely alleges that Turbo relied on 'promises of fact made on the product's containers and labels,' without specifying what representations or warranties, if any, they contained." *Id.*  "It is basic," the judge went on, "that to state a cause of action for breach of express warranty, a plaintiff must set forth the terms of the warranty upon which it relied." *Id.* at *5-6 (citing *Davis v. New York City Hous. Auth.*, 668 N.Y.S.2d 391 (App. Div. 1998)).  Because of the plaintiff subconstractor's failure to do so, its allegations were found to be "wholly insufficient to support a claim for breach of express warranty." *Id.* at *6.

Here, the plaintiffs have also failed to sufficiently set forth the terms of the particular warranty upon which they allegedly relied.  Instead, the plaintiffs speak at a high order of abstraction about the allegedly "false and misleading" assertions of fact Fiber Composites made with respect to the decking materials' quality, character, and durability.  Rather than laying out the precise terms of the express warranty allegedly relied upon, the complaint simply states that Fiber Composites "expressly warranted and represented the [decking materials] to be reasonably safe and fit for the use for which it was intended, of merchantable quality, and free from defects"—an allegation that seems almost a recitation of a legal standard.  *See* N.Y. U.C.C. § 2-314(2)(c) (describing "merchantable" goods as those goods that, among other things, "are fit for the ordinary purposes for which such goods are used").

In the section of their complaint addressing this third cause of action, the plaintiffs also fail to specify where this alleged warranty appeared.  From the section addressing their second cause of action, it can be presumed it appeared on Fiber Composites' website, but this is just a presumption.[5]  Even if the plaintiffs' assertion that the express warranty was "a basis of the

---

[5] The plaintiffs belatedly allege that "Defendant clearly exhibits its warranties on its website which is readily available to purchasers of its product(s)."  [Pls.' Mem. of Law 13.]  From this statement, however, it remains unclear

bargain for plaintiff[s] entering into the transaction" could pass for a showing of reliance—though this would be a stretch—the plaintiffs have nevertheless failed to sufficiently allege the precise terms of the express warranty relied upon.  For this reason, their breach of express warranty claim is dismissed.

### B.  Implied Warranty of Merchantability

It is well established that "[t]he implied warranty of merchantability is a guarantee by the seller that its goods are fit for the intended purpose for which they are used and that they will pass in the trade without objection."  *Wojcik v. Empire Forklift, Inc.*, 783 N.Y.S.2d 698, 700 (App. Div. 2004) (internal quotation marks omitted).  "Under New York law, privity is generally required to recover economic losses pursuant to a cause of action for breach of implied warranty."  *Westport Marina, Inc. v. Boulay*, 783 F. Supp. 2d 344, 356 (E.D.N.Y. 2010); *see also Arthur Jaffee Assocs. v. Blisco Auto Serv., Inc.*, 453 N.Y.S.2d 501, 502 (App. Div. 1982), *aff'd*, 448 N.E.2d 792 (N.Y. 1983).  More specifically, privity of contract with the manufacturer is required "to recover for economic loss due to *property damage* allegedly caused by a breach" of implied warranty.  *Am. Ref-Fuel Co. of Niagara, LP v. Gensimore Trucking, Inc.*, No. 02-CV-814C, 2007 WL 2743449, at *4 (W.D.N.Y. Sept. 18, 2007) (emphasis added).  Only when a plaintiff alleges personal injury resulting from the breach of implied warranty is the privity requirement lifted.  *See Pronti v. DML of Elmira, Inc.*, 478 N.Y.S.2d 156, 157 (App. Div. 1984) ("There is no implied warranty of merchantability from a manufacturer to a remote purchaser not in privity with that manufacturer where only property damage, and not personal injury, is alleged."); *Inter Impex S.A.E. v. Comtrade Corp.*, No. 00 Civ. 0133, 2004 WL 2793213, at *5 (S.D.N.Y. Dec. 6, 2004) ("No showing of privity is required in personal injury actions for breach

---

whether Fiber Composites exhibited these warranties on its website in 2007, when the express warranty was allegedly breached, or in 2011, when the plaintiffs filed their opposition memorandum.

of implied warranty.  However, in non-personal injury actions, privity must necessarily exist because the creation of the warranty requires a direct exchange between buyer and seller." (citation and internal quotation marks omitted)).

Here, in order for the plaintiffs to successfully bring a claim for breach of implied warranty, they must show that there was privity of contract between themselves and Fiber Composites.  This is so because the only damages they allege are (1) economic loss resulting from the damage to their deck and (2) the loss of use of their deck, which is a form of property damage.  As established above, the plaintiffs have not adequately pled any personal injury resulting from Fiber Composites' alleged misconduct.

The closest the plaintiffs come to establishing privity is the allegation in their complaint that Fiber Composites "sold and/or distributed the aforementioned DECKING MATERIALS to the plaintiffs."  [Verif. Compl. ¶ 25.]  Although a direct buyer-seller relationship is sufficient to establish privity, *cf. Ayanru v. Gen. Motors Acceptance Corp.*, 495 N.Y.S.2d 1018, 1021 (Civ. Ct. 1985) (holding that there was no privity between the plaintiff and the defendant because there was no "buyer-seller relationship"), here, the plaintiffs have failed to establish that a direct contractual relationship existed between themselves and Fiber Composites.  The plaintiffs do not allege, for example, that they purchased the decking materials directly from Fiber Composites. While Fiber Composites may indeed have "sold and/or distributed" the decking materials to the plaintiffs, the plaintiffs may nevertheless be several-times-removed, downstream purchasers with no direct connection to Fiber Composites itself.

In their opposition memorandum, the plaintiffs attempt to buttress their assertion of privity by pointing to their allegation that Fiber Composites "provided services . . . to remedy the plaintiffs for the defective DECKING MATERIALS."  [Verif. Compl. ¶ 22.]  But because these

services were not rendered until after the decking materials were purchased, this post-purchase exchange is not enough to establish privity. *See Kolle v. Mainship Corp.*, No. 04CV711, 2006 WL 1085067, at *5 (E.D.N.Y. Apr. 20, 2006) (finding that post-purchase contact between consumer and manufacturer was insufficient to create privity with respect to implied warranties). In sum, because the complaint fails to allege facts that establish the existence of privity between the plaintiffs and Fiber Composites, their breach of implied warranty claim is dismissed.[6]

## CONCLUSION

Because the plaintiffs have failed to "nudge[] their claims across the line from conceivable to plausible," none of their three causes of action survive Fiber Composites' motion to dismiss. *Twombly*, 550 U.S. at 570. The plaintiffs' complaint is, therefore, dismissed with leave to replead.

SO ORDERED.

Brooklyn, New York
April 17, 2012

*Edward R. Korman*

Edward R. Korman
Senior United States District Judge

---

[6] The plaintiffs' statement in their complaint that the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301-12, applies is a mere legal conclusion, and they at no point argue that this Act has been violated. Regardless, this Act does not supplant state privity requirements. *See Mazzuocola v. Thunderbird Prods. Corp.*, No. 90-CV-0405, 1995 U.S. Dist. LEXIS 6883, at *8 (E.D.N.Y. May 16, 1995); *Oscar v. BMW of N. Am.*, No. 09 Civ. 11, 2011 U.S. Dist. LEXIS 62601, at *26 (S.D.N.Y. June 7, 2011) ("The MMWA does not create additional bases for recovery, but rather federalizes existing state law causes of action.").